(C. D. 933).

EDWARD I. PETOW & SON *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 23, 1945)

*Joseph F. Lockett* for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise involved here consists of certain fresh sea herring scales imported in bulk at the subport of Eastport,

Maine. The collector assessed duty thereon at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as a non-enumerated unmanufactured article, providing as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, * * *.

The plaintiff claims that the merchandise is entitled to free entry under the following paragraphs of said act:

PAR. 1677. Fish imported to be used for purposes other than human consumption.

PAR. 1678. Fishskins, raw or salted.

PAR. 1756. *Sea herring*, smelts, and tuna fish, fresh or frozen, whether or not packed in ice, and *whether or not whole*. [Italics not quoted.]

PAR. 1780. Tankage, fish scrap, fish meal, cod-liver oil cake, and cod-liver oil cake meal, all the foregoing unfit for human consumption.

At the trial evidence was produced to establish the character of the merchandise in its imported condition, and how and where it was produced and transported to the United States. Samples were admitted in evidence illustrative of the various stages of production of the finished product. Summarizing such evidence briefly, it appears that the sea herring from which the scales are removed are taken from Canadian waters at certain suitable places in fish weirs designed especially and set up for that purpose. When the herring are confined in the weir the net lying on the sea floor inside the weir is drawn up and the fish are dipped therefrom into what are known as trap boats, being rowboats having a false bottom made of wooden slats with spaces between them. These trap boats are filled up to the gunwales with herring. In transferring from the net to the trap boats the herring shed their belly scales. These scales drop down through the slat floor to the bottom of the boats. When loaded, the row or trap boats proceed to a steamer where the herring are removed by means of a large scoop net. After delivering their cargoes of herring, the trap boats are tipped down on one end so that the material in the bottom will flow to that end, then a trap door in the floor is removed and the contents are scooped out. This material, consisting of sea water, fish scales, seaweeds, parts of fish, and accompanying offal, is then placed in a netting contraption known as a "scale saver" which allows much of the sea water to run off. The remaining material is emptied into baskets holding 2 bushels furnished by the importer. These baskets are placed on board a power boat that proceeds directly to the plant of the plaintiff as fast as possible to prevent deterioration of the fish scales. When alongside the manufacturer's dock, a customs official is called and in his presence the baskets are hoisted to the dock and weighed by the customs official on platform scales.

The product sought from the fish scales is the glint or guanine which is peculiar to the fresh sea herring. Guanine in its natural state is

found upon the herring scale where it is held in place by a film of skin. The processes at the factory remove the guanine from the scales. The scales are then discarded as scrap. Before the importing company had discovered guanine on fish scales and developed a use therefor the herring fish scales had been discarded.

The fish scales in question consisted of such as were naturally shed from the herring and were free from preservative of any sort. However, when the fresh sea herring are processed for canning at American factories, methods have been developed to separate the fish scales removed from the herring from other offal. Such scales are also sent to plaintiff for processing. The guanine on such scales is not of the quality of that on the fresh belly scales. The scales as recovered in the American fish cannery, of course, are not subject to duty because the fresh sea herring are admitted duty free.

It was further established that the fish scale in question is a part of the skin of the herring. The scale is from underneath the skin and grows up through a layer of the dermal tissue and through the epidermis. Over this scale, as well as over the entire fish, is another layer of skin. The fish scale is a part of the fish as well as a part of the skin, although of a different structure. Guanine is found intermingled in the skin of the herring and is a part of it whereas it is not a part of the scale, being merely laid on top of the scale and held on by skin.

It was also shown that a herring is skinned in being prepared for canning. To skin a herring the fins are cut off and cast aside. The fish is split through the stomach, cutting slots around the fish's gills and tearing the skin down toward the tail. The scales come off along with the skin. The head is then removed down three-quarters of the way toward the gills. When removing the head, the entrails, being connected with the head, are removed at the same time and then the tail is cut off. The part discarded is called fish scrap and includes fish scales.

The plaintiff contends that under the rule of long-continued administrative practice the merchandise should continue to be classified under duty-free paragraph 1677, 1678, 1756, or 1780; that the letter appearing in the Treasury Decisions as T. D. 50927, ordering a change in the practice of classifying fresh herring fish scales and followed by the collector here, is illegal and of no force or effect because it was not signed or approved by the Secretary of the Treasury, as required by section 315 of the Tariff Act of 1930, as amended by section 6 of the Customs Administrative Act of June 25, 1938; and that the decision was also illegal and void in respect to the merchandise in question because the department order referred only to "Fresh herring fish scales, washed and packed in sacks," and to "salt herring scales in bulk," and the merchandise in question was neither washed nor packed in sacks nor was it in bulk. The Government conceded at

the trial that the imported fresh sea herring scales in question were neither washed nor packed in sacks, and also that they were not salt herring scales.

Counsel for the Government contends that the proper classification of the imported merchandise is as a raw or unmanufactured article, and that the scales attached to the skin are not fishskin, one portion of the whole admittedly being the scales of fish and the other the skin of fish.   As for the scales in question being fish under paragraph 1677, counsel points out that our appellate court held in *United States* v. *Carnegie*, 8 Ct. Cust. Appls. 377, T. D. 37631, that herring milt was not classifiable as all other fish because it did not form any part of its flesh or organic structure.   Further, the Government contended that the statutes involved are not of doubtful construction and therefore the doctrine of long-continued administrative practice may not be invoked for that reason, and also because fish scales, although previously admitted free of duty, were not uniformly classified under any one duty-free provision.   In answer to the plaintiff's contention that under the provisions of section 315, as amended, the plaintiff is entitled to 30 days' notice of a change in classification, it is suggested that if the fish scales in question do not fall within the language of T. D. 50927, the plaintiff would not be entitled to such notice in any event.

The product here imported is established to consist of fresh sea herring scales, parts of fish, accompanying offal and a little sea water and seaweeds.   The material was neither washed nor packed in sacks and not salt herring scales in bulk.   Not being within the description of the merchandise the subject of T. D. 50927 it will be unnecessary to discuss the legality of the Treasury decision either as to the signature or as to its application to the imported merchandise under section 315, as amended by the Customs Administrative Act.

The sole question therefore is the proper classification of the merchandise in its imported condition.   In such condition, is it enumerated in any of the duty-free paragraphs of the act, as contended for by the plaintiff, or, for lack of enumeration, is it relegated to the nonenumerated unmanufactured provision, as assessed by the collector?

In *Petow* v. *United States*, T. D. 43185, this court held that liquid fish scale, the glitter or luster removed from the scales of herring and preserved in a solution of ammonia, was dutiable at 10 per centum ad valorem as a nonenumerated unmanufactured article under paragraph 1459 of the Tariff Act of 1922, which was the same as the provisions of paragraph 1558, *supra*.   The product in that case was the guanine after removal thereof from the fish scales.   The material before us now contains herring scales which are in the condition of such scales before any attempt has been made to separate the guanine therefrom.

We are of the opinion that the refuse from the rowboats used to contain herring in transportation between the weir nets and the fishing vessel cannot be regarded as fish. The use of the noun "fish" as an adjective to describe the scales is not sufficient to bring such material within paragraph 1677. In our opinion the merchandise imported was more than fish scales; it was comprised partly of seawater and other offal of fish. Therefore, in our opinion, classification under paragraph 1678 is untenable. The specific provision in paragraph 1756 for sea herring, whether or not whole, is no more applicable to the imported product than is paragraph 1677 for fish. That paragraph never was intended to comprehend fish refuse such as at issue here. For the reasons stated we hold that the merchandise is not classifiable under paragraph 1677, 1678, or 1756.

The remaining provision under which classification is claimed is paragraph 1780, as fish scrap unfit for human consumption. We are of the opinion that the product, as imported, illustrated by illustrative exhibit D and described as containing sea water, seaweeds, fish scales, parts of fish, and accompanying offal, is comprehended within this provision. The word "scrap" is defined in the Century Dictionary and Cyclopedia as "A small piece, properly something scraped off; a detached portion; a bit; a fragment; a remnant: as, scraps of meat. * * * the refuse of fish, as menhaden, after the oil has been expressed: * * * Green scrap, crude fish-scrap or guano, containing 50 to 60 per centum of water; * * *." Bearing in mind that as imported the merchandise is something more than fish scales, it would correspond to fish scrap, under the foregoing definitions of "scrap." Being specifically enumerated, it would be classifiable under paragraph 1780 rather than paragraph 1558, and we so hold.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entries and make refund of all duties taken.